IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA A. HOFACKER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 16-517 |
| WELLS FARGO BANK NATIONAL ASSOCIATION, | : | |
| Defendant. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                            **April 7, 2016**

      Presently before this Court is Defendant, Wells Fargo Bank National Association's ("Defendant"), "Motion to Dismiss Plaintiff's Complaint," the Response in Opposition by Plaintiff, Lisa A. Hofacker ("Plaintiff"), and Defendant's Reply in Further Support of its Motion to Dismiss. For the reasons set forth below, this Motion is granted without prejudice.

**I.     BACKGROUND**

      On June 10, 2015, Plaintiff initiated this lawsuit by filing a Writ of Summons in the Lehigh County Court of Common Pleas against her former employer. On December 22, 2015, Plaintiff filed a Complaint setting forth claims under the Americans with Disabilities Act ("ADA") at 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA") at 43 Pa.C.S.A. § 951 et seq. Defendant responded by filing a Notice of Removal to this Court on January 4, 2016. (Doc. No. 1.)

      The facts of this case begin on approximately February 7, 2012, when Plaintiff was hired as a part-time teller/sales associate by Defendant's branch, which is located at 541 Main Street,

Slatington, Pennsylvania, 18080. (Compl ¶ 7.) Soon after Plaintiff was hired, she made an oral request for a reasonable accommodation. (Id. ¶ 11.) Plaintiff suffered from a permanent right-sided long thoracic and suprascapular nerve injury, fibromyalgia, and a non-displaced tear of the right superior glenoid labrum. (Id. ¶ 8.) If she performs repetitive motions, these injuries cause extreme pain and fatigue. (Id. ¶¶ 9-10.)

Due to these injuries, Plaintiff requested that she not be required to work the drive-through banking window because "she was unable to bear the repeated operation of the pneumatic tubes utilized with and by drive-through banking customers." (Id. ¶ 12.) Plaintiff made her request to branch managers and, after receiving no response, submitted an identical written accommodation online. (Id. ¶¶ 13-14). Defendant eventually granted Plaintiff's request on or about March or April 2012, and continued to allow the accommodation until September 2013. (Id. ¶ 15.) It was during that period that the drive-through window was reconfigured in an effort to eliminate the need for over-the-head reaching by employees. (Id. ¶ 16.)

Plaintiff alleges that on or about November 17, 2012, she attempted to work the reconfigured drive-through window, but experienced tremendous pain, and Defendant, again, accommodated her by removing her from her drive-through duties. (Id. ¶ 17.) In August 2013, Defendant's Accommodations Specialist, Susan J. Price ("Ms. Price"), wrote a letter to Plaintiff's physician requesting clarification with respect to her physical limitations. (Id. ¶ 18.) On August 26, 2013, Plaintiff's physician, Dr. Patrick Hanley, D.O. ("Dr. Hanley") responded in writing to Ms. Price, speculating that the reconfigured drive-through work station should alleviate Plaintiff's pain. (Id. ¶ 19.)

Plaintiff alleges that on September 28, 2013, she was told by branch manager Christine Steigerwalt that working at the drive-through window was an essential function of her job and

due to unspecified staffing issues, she would no longer be provided the assistance of a second employee to handle the exchange of items from the pneumatic tubes.  (Id. ¶¶ 20-21.)  The next day on September 29, 2013, Plaintiff worked the drive-through window without assistance.  (Id. ¶ 23.)  Plaintiff alleges that working the drive-through window resulted in her having to take a forced leave of absence a day after the shift due to extreme pain.  (Id. ¶ 24.)

On or about January 20, 2014, Dr. Hanley provided a note to Defendant clearing Plaintiff to return to work on the restriction that she not work the drive-through window until a functional capacity evaluation was performed.  (Id. ¶ 25.)  Ms. Price sent a letter to Plaintiff on January 24, 2014, indicating she was unhappy with Dr. Hanley's request and she would not abide by it; rather, she would hold Plaintiff's job open until February 7, 2014, to accommodate the functional capacity evaluation, which was scheduled for January 28, 2014.  (Id. ¶ 26; Exh. C.)

Following the functional capacity evaluation, Dr. Hanley sent a letter to Ms. Price indicating that Plaintiff needed to be limited to jobs that did not include over-the-head reaching or any type of pulling or pushing with the right arm.  (Id. ¶¶ 27; Exh. D.)  These limitations were confirmed in a follow-up letter between Dr. Hanley and Ms. Price.  (Id. ¶¶ 28; Exh. E.)  Ms. Price then sent Plaintiff correspondence indicating that Defendant would accommodate her by having her use her left arm to push and pull any transactions at the lobby counter and by having her pull the canisters from the tubes with her left hand at the drive-through window.  (Id. ¶ 30; Exh. F.)  Plaintiff never returned to work because she alleges that Defendant failed to provide a reasonable accommodation despite its ability to do so, which resulted in her being forced from her job.  (Id. ¶ 32; Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss at 4.)

Presently before this Court is Defendant's Motion to Dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  (Doc. No. 4.)

Defendant contends that Plaintiff has failed to state a claim against it for two reasons: (1) Defendant did not fail to accommodate Plaintiff; and (2) Plaintiff was not qualified to perform the essential functions of her job with or without a reasonable accommodation. (See Def.'s Mot. to Dismiss Pl.'s Compl. at 7-15.)

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted. Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Phila., No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)). In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff. Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The United States Supreme Court ("Supreme Court") set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. Wilson v. City of Phila., 415 F. Appx. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they

4

must be supported by factual allegations.  Iqbal, 556 U.S. at 679.  These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8.  See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Where there are well-pleaded facts, courts must assume their truthfulness.  Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief.  Id. at 679.  This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. 544 at 570).  This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'"  Id. (quoting Twombly, 550 U.S. at 557).  In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible."  Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

The general rule is that "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n.6 (3d Cir. 2010) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).  "However, an exception to the general rule is that a 'document integral to or

explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  Burlington, 114 F.3d at 1426 (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)); see also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").  The United States Court of Appeals for the Third Circuit ("Third Circuit") explained:

> The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond.  When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.

Pension Benefit, 998 F.2d at 1196-97 (citations omitted).

### III. DISCUSSION

Plaintiff's claims arise under the ADA and PHRA based on the premise of Defendant's failure to accommodate her needs attendant to her physical disability.[1]  Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A "qualified individual with a disability" is defined by the ADA as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

---

[1] "The PHRA and the ADA are 'basically the same . . . in relevant respects and 'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'"  Buskirk v. Apollo Metals, 307 F.3d 160, 166 n.1 (3d Cir. 2002) (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002)).  Therefore, we will analyze Plaintiff's ADA and PHRA claims under the same standards.

In order to establish a prima facie case of disparate treatment under the ADA, a plaintiff must show "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (citing Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998)).

**A. Failure to Accommodate**

Accepting as true all of the factual allegations in the Complaint, as well as all reasonable inferences that can be drawn from them, we find that Plaintiff has failed to allege Defendant did not act in good faith in seeking an accommodation for Plaintiff's disability.[2] Discrimination under the third prong of a prima facie case of disparate treatment under the ADA "includes failing to make reasonable accommodations for a plaintiff's disabilities." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). The ADA states that discrimination occurs when an employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A).

An employer and employee both "have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 771-72 (3d Cir. 2004) (citing Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997)). An employee can demonstrate that an employer breached its duty to provide

---

[2] We will not need to address the first prong of the analysis regarding whether Plaintiff was disabled as Defendant has conceded that fact for purposes of this Motion only. (See Def.'s Mot. to Dismiss Pl.'s Compl. at 8 n.2.) We will analyze the third prong first because if it is found as a matter of law that Defendant acted in good faith in seeking a reasonable accommodation, a detailed and in-depth review of the second prong, whether Plaintiff was qualified to perform the essential functions of the job, with or without the accommodation, would be unnecessary.

7

reasonable accommodations because it failed to engage in good faith in the interactive process by showing that:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Williams, 380 F.3d 751, 772 (citing Taylor, 184 F.3d at 319–20)).

As a threshold matter, we hold that a court is permitted to determine the questions of "reasonableness" and "good faith" at the motion to dismiss stage under the facts of this case. Defendant cited Kortyna v. Lafayette Coll., for the proposition that courts can make this determination; however, Plaintiff argued that the case was not applicable. 47 F. Supp. 3d 225 (E.D. Pa. 2014). We agree with Defendant as Kortyna clearly states:

> It is true that the question of reasonableness is a factual one. However, viewing the facts in the light most favorable to the plaintiff, no reasonable jury could find that the accommodations [defendant] proposed were not reasonable under the circumstances.

Id. at 240 n.50; see also Buskirk v. Apollo Metals, 307 F.3d 160, 170–71 (3d Cir. 2002) (explaining how question of fact regarding reasonableness can be decided by the court if no reasonable jury could have found employer did not reasonably accommodate).

Even viewing these facts in the light most favorable to her, Plaintiff has failed to show a lack of good faith by Defendant, which is necessary to make out a failure to accommodate claim. From the facts alleged, Defendant was aware of Plaintiff's disability as she made her accommodation request to several bank managers and via online soon after she was hired. (Compl. ¶¶ 11-14). It appears from her allegations that Plaintiff believes not working the drive-through window would be the only reasonable accommodation. However, an employer has no

8

requirement to provide an employee the exact accommodation that they want; rather, "[a]ll the interactive process requires is that employers make a good-faith effort to seek accommodations." Kortyna, 47 F. Supp. 3d 225 at 242 (quoting Hohider v. United Parcel Service, Inc., 574 F.3d 169, 187 (3d Cir. 2009)). "An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." Yovtcheva v. City of Phila. Water Dept., 518 F. App'x 116, 122 (3d Cir. 2013) (quoting Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996)).

Defendant, throughout the process, has made every effort to accommodate Plaintiff and her disability. Soon after she was hired, Plaintiff requested an accommodation to not work the drive-through window, and she admits that Defendant granted a reasonable accommodation in response. (Id. ¶ 15.) Defendant then reconfigured the drive-through window in an attempt to prevent over-the-head reaching. When Plaintiff experienced pain working the updated drive-through window, Defendant, again, granted her an accommodation and removed her from her drive-through window duties. (Id. ¶ 17.) When Defendant's Accommodation specialist reached out to Plaintiff's physician, he opined that the reconfigured drive-through window should alleviate Plaintiff's pain. (Id. ¶¶ 18-19.) Therefore, even though Plaintiff did not wish to work the window, Defendant made a good faith effort to accommodate her by reconfiguring the drive-through, which according to her doctor should likely have alleviated the pain.

When the reconfiguration appeared to not work, it was reasonable for Defendant to ask for clarification from Plaintiff's physician regarding her limitations since her physician previously opined that the reconfigured drive-through window should alleviate her pain, and Defendant was not supplied any medical documentation that substantiated a contradictory finding. Plaintiff's physician performed a functional capacity evaluation and stated that Plaintiff

should be accommodated by eliminating job responsibilities that included "over the head reaching or any type of pulling or pushing with the right arm." (<u>See</u> Compl., Exh. D.) Defendant continued to show a good faith effort by participating in the interactive process by seeking further clarification of Plaintiff's needs. (<u>Id.</u>, Exh. E.) Soon after, Defendant, in a letter to Plaintiff, offered the following accommodation:

> We agree the teller function does not require reaching above the shoulder. However, the position does require pushing and pulling with one or both arms, at both the lobby teller station and the drive-through station . . . . I have spoken to your managers about these teller functions, and I am pleased to confirm they feel they can accommodate the restrictions by having you use your left arm to push and pull any coin and/or transactions at the lobby counter, and by using your left arm to pull the canisters from the tubes at the drive-thru. When at the drive thru station, you should be able to turn to access the right tube or step slightly to the right for easier access to the tube.

(<u>Id.</u>, Exh. F.).

Although Defendant did not get the accommodation she desired, the accommodation offered by Defendant addressed all the limitations that her physician placed on her. Her new responsibilities would only include pushing and pulling with her fully functional left arm and over-the-head reaching was not an issue since it was eliminated from her duties when the drive-through window was reconfigured. Thus, Plaintiff was offered a position with an accommodation that eliminated over-the-head reaching and any pushing and pulling with her right arm, or put in another way, exactly what her doctor requested she would be offered.

Plaintiff also requested that she be treated the same as other employees by asserting that she wanted the same assistance from them that they provide each other. (<u>Id.</u>, Exh. F.) As the Supreme Court has explained, "reasonable accommodations" permit "those with disabilities to obtain the same workplace opportunities that those without disabilities automatically enjoy."

U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 397 (2002).  Defendant, again, accommodated her request by providing her with the assistance of another teller at the drive-through window with the right tube when the teller was unoccupied at the counter.  (Compl., Exh. F.)  In addition, Defendant offered to help transition Plaintiff back into working the drive-through window by not placing her on drive-through rotation on consecutive days.  (Id.)

      We agree with Defendant that Smiley v. Daimler Chrysler is factually similar to the case before us.  589 F. Supp. 2d 471 (D. Del. 2008).  In Smiley, the plaintiff worked for Chrysler as a right sided door fitter on an assembly line.  Id. at 477.  He suffered a work related injury to his right arm and was eventually placed on medical leave.  Id.  Upon the consultation between the plaintiff's physician, Chrysler's plant physician, and their physical accommodation committee, it was determined that the plaintiff could perform the alternative position of a left fender installer.  Id.  The plaintiff returned to work, but, again, was placed on medical leave as the accommodation resulted in further pain.  Id. at 478.  The plaintiff was eventually discharged for reasons unrelated to the reasonable accommodation issue.  Id. at 488.  The plaintiff brought a claim for failure to accommodate under the ADA.

      Plaintiff argues that the court in Smiley based its decision on the plaintiff's failure to prove a disability and "declined to make an affirmative finding that Chrysler's accommodation to the plaintiff was unreasonable, or that Chrysler did not make a good faith effort in coming to a reasonable accommodation."  (Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss at 8-9.)  Plaintiff is correct in stating that the plaintiff in Smiley failed to adequately establish a disability under the ADA.  Smiley, 589 F. Supp. 2d 471 at 484.  However, the court undoubtedly made a determination on the reasonable accommodation issue with the following:

> Based upon the facts before the court, it cannot be said that the accommodation was unreasonable or that Chrysler did not make a good faith effort to assist plaintiff in an accommodation.

Id. at 485.  Smiley is factually similar to the case before us.  In both cases, the employees had a disability to one side of their body and were offered accommodations that addressed this disability directly by having them utilize their uninjured side of their body in a new or altered job position.  In both cases, the employers showed a good faith effort by seeking advice from physicians in order to determine an appropriate accommodation.  The one major difference between the two cases is the fact that the plaintiff in Smiley actually engaged in the interactive process while our Plaintiff did not.

"In addition, the question of reasonableness is one that is determined when both parties engage in the interactive process to find accommodations."  Kortyna, 47 F. Supp. 3d 225 at 240 n.50 (citing Williams, 380 F.3d at 771–72).  Here, Defendant has engaged in the interactive process by communicating with Plaintiff and her physician in an attempt to find a reasonable accommodation and then offering an accommodation.  In response, Plaintiff has failed to respond to Defendant's proposed accommodations.  Instead, she filed this lawsuit.  Plaintiff has failed to provide us with any reasoning of why the accommodations that were offered would not adequately address her disabilities.  Rather, Plaintiff keeps reiterating the fact that she would have to work the drive-through window as if refraining from this duty is the only accommodation possible without offering any facts of why this is the case.  Plaintiff's failure to engage in the interactive process precludes her claim.  Id. (holding that the plaintiff's decision to sue rather than to respond to proposed recommendations resulted in a "failure to engage in th[e] interactive process [which] would also preclude his claim") (citing Hill v. Walker, 737 F.3d 1209, 1218 (8th Cir.2013); Smith v. Midland Brake, Inc., a Div. of Echlin, Inc., 180 F.3d 1154,

1173 (10th Cir.1999) (explaining how a plaintiff's failure to engage in the interactive process can preclude his ADA claim)). Plaintiff cannot bring a claim against Defendant for lack of good faith when she was the one who failed to adequately consider a reasonable accommodation offered.

      Accepting as true all of the factual allegations in the Complaint, as well as all reasonable inferences that can be drawn from them, we find no jury could find that the accommodations that were offered were not reasonable under the circumstances or that Defendant did not act in good faith in seeking such accommodations. An employer like Defendant has to take into account many issues including staffing, so although Defendant was not able to offer Plaintiff what she wanted, it offered an accommodation that fully addressed her limitations resulting from her disability and tried on multiple occasions to meet Plaintiff's needs and get her back into work. This is factually similar to Kortyna as the defendant in that case provided the plaintiff with an accommodation that addressed all of her limitations, but the plaintiff simply wanted his own particular accommodation, which the court held an employer is not required to provide. Kortyna, 47 F. Supp. 3d 225 at 242. "The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally." Felix v. N.Y.C. Transit Auth., 324 F.3d 102, 107 (2d Cir. 2003) (citing U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 397 (2002)). Furthermore, an employer's good faith effort to identify and provide an accommodation provides a complete statutory defense to damages. 42 U.S.C. § 1981a(a)(3).

      Therefore, we find that Plaintiff has failed to allege Defendant did not act in good faith in seeking an accommodation for Plaintiff's disability. We will allow Plaintiff thirty days to file an

Amended Complaint if she so chooses to cure its deficiencies.[3]  However, we counsel Plaintiff that if she fails to file an Amended Complaint within the thirty days that we will dismiss the case with prejudice for failing to state a claim from which relief can be granted.[4]

### B. Whether Drive-Through Window was an Essential Function

In light of Plaintiff's failure to adequately allege that Defendant did not act in good faith in seeking an accommodation for her disability, we will not consider, at this time, whether Plaintiff satisfied the second prong of a prima facie case of disparate treatment under the ADA, i.e., whether she is otherwise qualified to perform the essential functions of the job.  We do alert Plaintiff that this issue can be decided at the motion to dismiss stage.[5]  See Kiniropoulos v. Northampton Cnty. Child Welfare Serv., 606 F. App'x 639 (3d Cir. 2015) (upholding 12(b)(6)

---

[3] "[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile . . . . Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000)).

[4] The Third Circuit recommended a procedure for district courts to follow when dismissing complaints without prejudice and suggested that "district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if timely amendment is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with the district court asserting his intent to stand on the complaint at which time an order to dismiss the action would be appropriate." Borelli v. City of Reading, 532 F.2d 950, 951 n.1 (3d Cir. 1976).

[5] Although we will not make a final determination on this issue, at this time, we caution Plaintiff that she may need to rely on more than just her job description to survive a possible future 12(b)(6) motion. "A job's 'essential functions' are defined in 29 C.F.R. § 1630.2(n)(1) as those that are 'fundamental,' not 'marginal.'" Skerski v. Time Warner Cable Co., 257 F.3d 273, 279 (3rd Cir. 2001).  "A job function may be considered essential for any of several reasons, including but not limited to the following: (1) the function may be essential because the reason the position exists is to perform that function; (2) the function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (3) the function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2). "The regulations further set forth a non-exhaustive list of seven examples of evidence that are designed to assist a court in identifying the 'essential functions' of a job. They include: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (7) the work experience of past incumbents in the jobs; and/or (7) the current work experience of incumbents in similar jobs." Skerski, 257 F.3d at 279 (citing 29 C.F.R. § 1630.2(n)(3)).

dismissal for failure to adequately plead that the plaintiff could perform the essential functions of the position with or without an accommodation).

## IV.     CONCLUSION

For the aforementioned reasons, we grant Defendant's Motion to Dismiss without prejudice and allow the Plaintiff 14 days to properly amend her Complaint.  We caution Plaintiff to carefully follow the guidelines set forth in this Opinion or her claim may be dismissed without leave to amend.

An appropriate Order follows.