IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA A. HOFACKER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 16-517 |
| WELLS FARGO BANK NATIONAL ASSOCIATION, | : | |
| Defendant. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                 **July 5, 2016**

Presently before this Court is Defendant, Wells Fargo Bank National Association's ("Defendant") "Motion to Dismiss Plaintiff's Amended Complaint," the Response in Opposition by Plaintiff, Lisa A. Hofacker ("Plaintiff"), and Defendant's Reply in Further Support of its Motion to Dismiss. For the reasons set forth below, this Motion is denied.

### I.   BACKGROUND

On June 10, 2015, Plaintiff initiated this lawsuit by filing a Writ of Summons in the Lehigh County Court of Common Pleas against her former employer. On December 22, 2015, Plaintiff filed a Complaint setting forth claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 951 et seq. Defendant responded by filing a Notice of Removal to this Court on January 4, 2016. (Doc. No. 1.)

The facts of this case begin on approximately February 7, 2012, when Plaintiff was hired as a part-time teller/sales associate by Defendant's branch, which is located at 541 Main Street,

Slatington, Pennsylvania. (Am. Compl. ¶ 8.) Soon after Plaintiff was hired, she made an oral request for a reasonable accommodation due to difficulties she was experiencing while working the drive-through station. (Id. ¶ 12.) Plaintiff suffered from a permanent right-sided long thoracic and suprascapular nerve injury, fibromyalgia, and a non-displaced tear of the right superior glenoid labrum. (Id. ¶ 9.) Specifically, Plaintiff has nerve injuries in her right arm and shoulder, and has difficulty pushing and pulling and reaching overhead with her right hand and arm. (Id. ¶ 11.) Plaintiff has equal difficulty pushing, pulling, and reaching overhead with her left hand and arm. (Id.)

Due to these injuries, Plaintiff requested that she not be required to work the drive-through banking station because "she was unable to bear the repeated handling of the 'pencil boxes' utilized to process transactions via a pneumatic system in place above shoulder level which aggravated the conditions described above causing Plaintiff pain." (Id. ¶ 13.) Plaintiff made her request to three branch managers and, after receiving no response within two months, submitted an identical written accommodation online. (Id. ¶¶ 14-15.) Defendant eventually granted Plaintiff a reasonable accommodation or about March or April of 2012, and continued to allow the accommodation until September of 2013. (Id. ¶ 16.) During this time, Plaintiff would work in the lobby, and be brought paperwork by another employee from the 'pencil boxes' delivered through the drive-through station when needed. (Id.) Also, during that period, the drive-through station was reconfigured. (Id. ¶ 17.) Plaintiff believes that Defendant's decision to modify the drive-through area was unconnected to Plaintiff's specific need and was not done in an effort to reasonably accommodate her. (Id. ¶ 18.) The reconfigured drive-through station involved the use of "tubes" instead of "pencil boxes," which were delivered by a pneumatic system to the drive-through teller desk within the bank. (Id. ¶ 19.)

2

Plaintiff alleges that she attempted to work the reconfigured drive-through station, but experienced tremendous pain because the new "tubes" were significantly heavier than the old "pencil boxes" and required both hands to manipulate. (Id. ¶ 20.) In August 2013, Defendant's Accommodations Specialist, Susan J. Price ("Ms. Price"), wrote a letter to Plaintiff's physician requesting clarification with respect to her physical limitations. (Id. ¶ 22.) On August 26, 2013, Plaintiff's physician, Dr. Patrick Hanley, D.O. ("Dr. Hanley") responded in writing to Ms. Price, speculating that the accommodation Defendant provided was sufficient. (Id. ¶ 23.)

Plaintiff alleges that on September 28, 2013, she was told by branch manager Christine Steigerwalt that working at the drive-through station was an essential function of her job and due to unspecified staffing issues, she would no longer be provided the reasonable accommodation she had been provided for the previous eighteen months. (Id. ¶ 24.) This was in direct contradiction to Dr. Hanley's recommendation that the same accommodation continue to be provided. (Id. ¶ 26.) Plaintiff believes that Defendant was, in fact, adequately staffed to continue to provide her with a reasonable accommodation. (Id. ¶¶ 25, 27.) The next day on September 29, 2013, Plaintiff worked the drive-through station without assistance. (Id. ¶ 28.) Plaintiff alleges that working the drive-through station resulted in her having to take a forced leave of absence a day after the shift due to extreme pain. (Id. ¶ 29.)

On or about January 20, 2014, Dr. Hanley provided a note to Defendant clearing Plaintiff to return to work on the restriction that she not work the drive-through station until a functional capacity evaluation was performed. (Id. ¶ 31.) Ms. Price sent a letter to Plaintiff on January 24, 2014, indicating she was unhappy with Dr. Hanley's request and she would not abide by it; rather, she would hold Plaintiff's job open until February 7, 2014, to accommodate the functional capacity evaluation, which was scheduled for January 28, 2014. (Id. ¶ 32; Ex. B.)

Following the functional capacity evaluation, Dr. Hanley sent a letter to Ms. Price indicating that Plaintiff needed to be limited to jobs that did not include over-the-head reaching or any type of pulling or pushing with the right arm. (Id. ¶ 33; Ex. C.) These limitations were confirmed in a follow-up letter between Dr. Hanley and Ms. Price. (Id. ¶¶ 34-35; Ex. D.) Ms. Price then sent Plaintiff correspondence indicating that Defendant would accommodate her by having her use her left arm to push and pull any transactions at the lobby counter and by having her pull the canisters from the tubes with her left hand at the drive-through station. (Id. ¶ 36; Ex. E.) Plaintiff attempted to return to work in March of 2014, but she was unable to perform the job because the new drive-through mechanism required the full use of both of her hands. (Id. ¶ 37.) As a result of Defendant's alleged insistence that Plaintiff perform her job in a manner that was beyond her physical restrictions, Plaintiff states that she suffered extreme pain and was forced to take another leave of absence in May 2014, which was her last month of work for Defendant. (Id. ¶ 38.)

On February 8, 2016, Defendant filed a motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be grant. (Doc. No. 4.) We granted Defendant's motion on April 7, 2016, without prejudice, and gave Plaintiff fourteen days to file an amended complaint to cure its deficiencies. (Doc. No. 9.) Subsequently, Plaintiff filed her Amended Compliant on April 21, 2016. (Doc. No. 11.) Presently before this Court is Defendant's Motion to Dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (Doc. No. 12.) Defendant contends that Plaintiff has failed to state a claim against it for two reasons: (1) Defendant did not fail to accommodate Plaintiff; and (2) Plaintiff was not qualified to perform the essential functions of her job with or without a reasonable accommodation. (See Def.'s Mot. to Dismiss Pl.'s Am. Compl. at 8-14.)

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted. Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Phila., No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)). In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff. Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The United States Supreme Court ("Supreme Court") set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint. Wilson v. City of Phila., 415 F. Appx. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations. Iqbal, 556 U.S. at 679. These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.

2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

The general rule is that "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n.6 (3d Cir. 2010) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). "However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Burlington, 114 F.3d at 1426 (citing Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)); see also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly

6

authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). The United States Court of Appeals for the Third Circuit ("Third Circuit") explained:

> The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond. When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.

Pension Benefit, 998 F.2d at 1196-97 (citations omitted).

## III. DISCUSSION

Plaintiff's claims arise under the ADA and PHRA based on the premise of Defendant's failure to accommodate her needs attendant to her physical disability.[1] Under the ADA, employers are prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined by the ADA as a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

In order to establish a prima facie case of disparate treatment under the ADA, a plaintiff must show "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment

---

[1] "The PHRA and the ADA are 'basically the same . . . in relevant respects and 'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'" Buskirk v. Apollo Metals, 307 F.3d 160, 166 n.1 (3d Cir. 2002) (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002)). Therefore, we will analyze Plaintiff's ADA and PHRA claims under the same standards.

decision as a result of discrimination." Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (citing Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998)).

### A. Whether the Drive-Through Station was an Essential Function

We find that it would be premature to determine, as a matter of law, the second prong of a prima facie case of disparate treatment under the ADA, i.e., whether Plaintiff is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by Defendant.[2] Id. It is well established that "[w]hether a particular function is essential is a factual determination that must be made on a case by case basis [based upon] all relevant evidence." Turner v. Hershey Chocolate U.S., 440 F.3d 604, 612 (3d Cir. 2006) (quoting Deane v. Pocono Medical Ctr., 142 F.3d 138, 148 (3d Cir. 1998)); see also Skerski v. Time Warner Cable Co., 257 F.3d 273, 279 (3d Cir. 2001) (same). Whether a job duty is an "essential function" turns on whether it is "fundamental" to the employment position. 29 C.F.R. § 1630.2(n)(1); Turner, 440 F.3d at 612 (quoting 29 C.F.R. § 1630.2(n)(1)). The term "essential function" does not include the "marginal" functions of the position. Id. at § 1630.2(n)(1).

"A job function may be considered essential for any of several reasons, including but not limited to the following: (1) the function may be essential because the reason the position exists is to perform that function; (2) the function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (3) the function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." Id. at § 1630.2(n)(2).

> The regulations further set forth a non-exhaustive list of seven examples of evidence that are designed to assist a court in identifying the 'essential functions' of a job. They include: (1) the employer's judgment as to which functions are essential; (2)

---

[2] We will not need to address the first prong of the analysis regarding whether Plaintiff was disabled as Defendant has conceded that fact for purposes of this Motion only. (See Def.'s Mot. to Dismiss Pl.'s Am. Compl. at 9 n.5.)

> written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (7) the work experience of past incumbents in the jobs; and/or (7) the current work experience of incumbents in similar jobs.

Skerski, 257 F.3d at 279 (citing 29 C.F.R. § 1630.2(n)(3)).

  Here, Plaintiff admits that she is unable to work the drive-through station. (Am. Compl. ¶ 42.) Thus, if we determine that working the drive-through station is an essential function of her job, she will be unable to satisfy the second prong of a prima facie case of disparate treatment under the ADA. See Shaner, 204 F.3d at 500 (noting that a prima facie case of disparate treatment under the ADA requires a showing that the employee is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer). Plaintiff claims that working the drive-through station was not an essential function of the job due, in large part, to the fact that it was not specifically identified in the written job description or in the qualifications of the teller position. (Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss at 13-17.) Defendant admits that working the drive-through station was not specifically discussed in the job description, but notes that "processing consumer transactions" was, and that is essentially what the drive-through station entails. (See Def.'s Mot. to Dismiss Pl.'s Am. Compl. at 13-14.)

  We agree with Plaintiff and do not feel it would be appropriate, at this early stage in the case, to determine whether working the drive-through was an essential function of the job. Although Plaintiff's evidence is minimal, it would be premature to make this determination before the parties had the benefit of discovery, as many of the factors used by courts to determine if the function is essential are not present. Discovery would allow us to determine the remaining

factors such as, the amount of time spent on the job performing the function; the consequences of not requiring Plaintiff to perform the function; the terms of a possible collective bargaining agreement; the work experience of past incumbents in the jobs; and the current work experience of incumbents in similar jobs.  See 29 C.F.R. § 1630.2(n)(3).

Additionally, the Third Circuit has noted that the essential function determination is a factual question, and has recommended that it should typically be left for the jury to decide.[3] See Deane, 142 F.3d at 148 (refusing to grant summary judgment on the basis that the question of whether lifting heavy objects was an essential function of a nurse was a fact question for the jury); see also Skerski, 257 F.3d at 280 (reversing district court's holding that climbing was an essential function of installer technician and cautioning against snap judgments regarding essential functions); Turner, 440 F.3d at 613 ("[T]he fact issue as to 'essential function' must be decided by a jury.").  For these reasons, we find it would be premature to determine, as a matter of law, whether working the drive-through station was an "essential function" of Plaintiff's job.

### B. Failure to Accommodate

Accepting as true all of the factual allegations in the Amended Complaint, as well as all reasonable inferences that can be drawn from them, we find that Plaintiff has sufficiently alleged the third prong of a prima facie case of disparate treatment under the ADA.  See Shaner, 204 F.3d at 500 (noting that the third prong of a prima facie case of disparate treatment under the ADA requires a showing that the employee "has suffered an otherwise adverse employment decision as a result of discrimination").  Discrimination under the third prong encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also "includes failing to

---

[3] We do recognize that the Third Circuit has recently upheld a rule 12(b)(6) dismissal for failure to adequately plead that the plaintiff could perform the essential functions of the position with or without an accommodation; however, that case involved circumstances where no reasonable jury could have come to an alternate conclusion.  See Kiniropoulos v. Northampton Cnty. Child Welfare Serv., 606 F. App'x 639 (3d Cir. 2015) (upholding rule 12(b)(6) dismissal for failure to adequately plead that the plaintiff could perform the essential functions of the position with or without an accommodation when the employee admitted on several occasions that he could not work at all).

10

make reasonable accommodations for a plaintiff's disabilities." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). The ADA states that discrimination occurs when an employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A).

An employer and employee both "have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 771-72 (3d Cir. 2004) (citing Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997)). An employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.[4]

Williams, 380 F.3d 751, 772 (citing Taylor, 184 F.3d at 319–20).

Here, accepting the factual assertions in the Amended Complaint as true, Plaintiff has set forth "sufficient factual matter" to show that the reasonable accommodation claims are facially plausible. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). At this early

---

[4] As a threshold matter, we hold that a court is permitted to determine the questions of "reasonableness" and "good faith" at the motion to dismiss stage under the facts of this case. See Kortyna v. Lafayette Coll., 47 F. Supp. 3d 225, 240 n.50 (E.D. Pa. 2014) ("[I]t is true that the question of reasonableness is a factual one. However, viewing the facts in the light most favorable to the plaintiff, no reasonable jury could find that the accommodations [defendant] proposed were not reasonable under the circumstances."); see also Buskirk v. Apollo Metals, 307 F.3d 160, 170–71 (3d Cir. 2002) (explaining how question of fact regarding reasonableness can be decided by the court if no reasonable jury could have found employer did not reasonably accommodate).

stage in the case, Plaintiff has properly alleged all four of the required elements that are needed in order to show that Defendant has failed to engage in good faith in the interactive process. First, Defendant was aware of Plaintiff's disability as she made her accommodation request to three bank managers and via online soon after she was hired. (Am. Compl. ¶¶ 12-15.) Second, Plaintiff requested that she be granted the accommodation of not working the drive-through station when she first arrived. (Id. ¶ 13.) Although not expressly stated, the facts also indicate that, in her discussions with Ms. Price, she requested to not work the drive-through station after it was reconfigured from "pencil boxes" to the pneumatic system involving tubes. (Id. Ex. E.)

  The third requirement, regarding whether Defendant made a good faith effort to assist Plaintiff in seeking accommodations, is not so clear in this case. An employer has no requirement to provide an employee the exact accommodation that they want; rather, "[a]ll the interactive process requires is that employers make a good-faith effort to seek accommodations." Kortyna, 47 F. Supp. 3d 225 at 242 (quoting Hohider v. United Parcel Service, Inc., 574 F.3d 169, 187 (3d Cir. 2009)). "An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." Yovtcheva v. City of Phila. Water Dept., 518 F. App'x 116, 122 (3d Cir. 2013) (quoting Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996)).

  Soon after she was hired, Plaintiff made a request for an accommodation to several branch managers regarding not having to work the drive-through station due to shoulder pain. (Am. Compl. ¶¶ 12-14.) These requests went unanswered for approximately two months; however, she admits Defendant did eventually grant a reasonable accommodation after she made the same request online. (Id. ¶¶ 14-16.) Defendant then reconfigured the drive-through station in an attempt to prevent over-the-head reaching. (Id. ¶ 17.) However, Plaintiff avers that this

was unrelated to her disability and was not a specific effort to provide a reasonable accommodation for her.  (Id. ¶ 18.)  Plaintiff experienced pain while working the reconfigured drive-through station because the new "tubes" were significantly heavier than the old "pencil boxes" and required both hands to manipulate.  (Id. ¶ 20.)  When Defendant's accommodation specialist reached out to Plaintiff's physician requesting clarification with respect to her physical limitations, he opined that "the accommodation provided by Defendant was sufficient."[5]  (Id. ¶¶ 22-23.)

On September 28, 2013, Plaintiff was informed that working the drive-through was an essential function of her job, and the reasonable accommodation previously provided to her over the previous eighteen months would no longer be provided due to unspecified staffing issues.  (Id. ¶ 24.)  When Plaintiff attempted to work the reconfigured drive-through station as requested, she experienced tremendous pain the following day and was forced to take an immediate leave of absence.  (Id. ¶¶ 28-29.)  Accepting these allegations as true, we do find that this instance indicates a failure of Defendant to engage in the interactive process, as Plaintiff suggests.  (Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss at 10-11.)  Defendant informed her that she had to work the reconfigured drive-through, which was in direct contradiction to her physician's recommendation that she should continue to be provided with the same accommodation.  (Am. Compl. ¶ 26.)

Plaintiff's physician then wrote a note clearing Plaintiff to return to work with the sole restriction of not working the drive-through station pending a functional capacity evaluation.  (Id. ¶ 31.)  Plaintiff's physician performed a functional capacity evaluation, and stated that

---

[5] The facts are unclear in regards to what accommodation Plaintiff's physician was referencing.  Later in her Amended Complaint, Plaintiff alleges that working the drive-through station was in direct contradiction with her physician's recommendation that the same accommodation be provided.  (Id. ¶ 26.)  Therefore, we will assume that the sufficient accommodation Plaintiff's physician discusses is referring to the accommodation of not being required to work the drive-through station.

Plaintiff should be accommodated by eliminating job responsibilities that included "over the head reaching or any type of pulling or pushing with the right arm." (See Am. Compl. Ex. C.) Defendant then sought clarification of Plaintiff's needs. (Id. Ex. D.) Soon after, Defendant, in a letter to Plaintiff, offered the following accommodation:

> We agree the teller function does not require reaching above the shoulder. However, the position does require pushing and pulling with one or both arms, at both the lobby teller station and the drive-through station . . . . I have spoken to your managers about these teller functions, and I am pleased to confirm they feel they can accommodate the restrictions by having you use your left arm to push and pull any coin and/or transactions at the lobby counter, and by using your left arm to pull the canisters from the tubes at the drive-thru. When at the drive thru station, you should be able to turn to access the right tube or step slightly to the right for easier access to the tube.

(Id. Ex. F.).

Thus, Plaintiff was offered a position with an accommodation that eliminated over-the-head reaching and any pushing and pulling with her right arm, or put in another way, exactly what her doctor requested that she be offered. However, in or about March of 2014, when Plaintiff returned to work and attempted to perform the job as required by Defendant, she was unable to do so because the new drive-through mechanism required the full use of both of her hands. (Id. ¶ 37.) "As a result of Defendant's insistence that Plaintiff perform the job in a manner that was beyond her physical restrictions, Plaintiff suffered extreme pain and was forced to take another leave of absence in May of 2014." (Id. ¶ 38.)

Accepting these factual allegations as true, Plaintiff has pleaded sufficient facts, at this early stage, for a plausible claim that Defendant did not act in good faith in seeking an accommodation for her. Although Defendant was accommodating initially, Plaintiff has pleaded facts that indicate that this did not continue throughout the whole process. The first instance

occurred when Defendant continued to insist that she perform her drive-through duties when it went against her physician's recommendations. (Am. Compl. ¶ 26.) The second instance occurred, later on, when Defendant insisted that Plaintiff continue to perform her job in accordance with the offered accommodation, even though, that accommodation was shown to be ineffective since Plaintiff was still required to use both of her hands to operate the reconfigured drive-through and experienced pain. (Id. ¶¶ 37-38.) This failure to adequately respond to Plaintiff's accommodation requests could be considered bad faith as explained in Taylor:

> [C]ourts should look for the signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary . . . . A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

184 F.3d at 312.

Finally, Plaintiff has pleaded sufficient facts that she could have been reasonably accommodated, but for Defendant's lack of good faith. Although Defendant cited staffing issues, Plaintiff avers that Defendant simply did not wish to provide her the accommodation any longer, and was, in fact, adequately staffed to continue to allow this same reasonable accommodation to continue. (Id. ¶ 25.) At this early stage, we must accept Plaintiff's factual allegations as true.

Defendant, unsurprisingly, claims it was Plaintiff who failed to participate in the interactive process, and alleges it complied with the ADA's reasonable accommodation provision by engaging in an "interactive process" with her by offering her reasonable accommodations throughout her employment. (See Def.'s Mot. to Dismiss Pl.'s Am. Compl. at 8-14.) However, Defendant's arguments rely on numerous issues of material fact that may not

be determined at the pleading stage.  Consequently, Plaintiff has sufficiently pleaded a prima facie case of failure to accommodate her disability under the ADA.

## IV.     CONCLUSION

For the aforementioned reasons, we deny Defendant's Motion to Dismiss Plaintiff's Amended Complaint.  Plaintiff alleges sufficient facts in her Amended Complaint to demonstrate that the she has a "plausible claim for relief" against Defendant.  See Fowler, 578 F.3d at 211.

An appropriate Order follows.